UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WHIRLPOOL PROPERTIES INC., et al.                REPORT AND
                Plaintiffs,                           RECOMMENDATION
      - against -
MENPIN SUPPLY CORP.,                             19-CV-2722 (ENV) (JO)
                Defendant.
------------------------------------------------------------X

James Orenstein, Magistrate Judge:

      In a Complaint filed on May 8, 2019, plaintiffs Whirlpool Properties, Inc., Whirlpool Corporation, and Maytag Properties, LLC (collectively "Whirlpool") accused defendant Menpin Supply Corp. ("Menpin") of trademark infringement and false designation of origin under the Lanham Act, common law trademark infringement and unfair competition, infringement of seven separate United States patents, and deceptive acts and practices under New York State law. *See* Docket Entry ("DE") 1 (Complaint). Menpin never responded to the Complaint and the Clerk has entered its default. Whirlpool now seeks a default judgment and an award of injunctive relief. *See* DE 17; DE 20. On referral from the Honorable Eric N. Vitaliano, United States District Judge, I now make this report and, for the reasons set forth below, respectfully recommend that the court grant the motion in part and deny it in part. Specifically, I recommend that the court enter judgment against Menpin on the first ten counts of the Complaint, dismiss the eleventh count, and issue a permanent injunction against Menpin in the form Whirlpool has submitted in their Paragraphs 1 to 3 of its Proposed Judgment.

I.    <u>Background</u>

    A.    <u>Facts</u>

      The following recitation of the facts is drawn from the Complaint's uncontested allegations and the uncontroverted documents submitted in support of the instant motion for default judgment. Whirlpool makes and sells refrigerators and related accessories bearing a number of marks, including

the Whirlpool word mark, which are protected under common law and federal trademark registrations. *See* Complaint ¶ 23. Whirlpool also owns the KitchenAid, Maytag, and EveryDrop brands, each of which uses marks protected under common law and federal trademark registrations. *See id.* ¶¶ 25-33. Whirlpool and its brands have engendered goodwill and have a reputation for providing premium products within the appliance industry and amongst members of the relevant consuming public. *See id.* ¶¶ 22, 25, 28, 31.

A major component of Whirlpool's business is the design, manufacture, supply, and sale of refrigerator filters, an important part of which is the water filter. Whirlpool recommends that its customers replace their water filters at least every six months. The design, supply, and sale of quality replacement water filters is an important part of Whirlpool's business, both in terms of revenue and maintenance of customer goodwill. Each of the Whirlpool water filters uses technology or features protected by patents issued by the United States Patent and Trademark Office ("USPTO") and owned by Whirlpool, including United States Patent Nos. 7,000,894, 8,356,716, 8,591,736, and 9,937,451. *See* DE 17-3 ("White Decl.") ¶¶ 4-7, 11.

Menpin is an online distributor and retail seller of replacement water filters for refrigerators. Complaint ¶ 9. Menpin has used Whirlpool's marks to promote its own products in sponsored advertisements on Google, listings on Walmart.com, and on its own website at aquabluefilter.com. *See* Complaint ¶¶ 35-62. As a representative example, Menpin maintained a listing on Walmart.com in which it purported to sell a product entitled "3Pack Whirlpool Filter 3, EDR3RXD1 Refrigerator Water Filter Nsf Certified." White Decl. ¶ 22. Despite the product's name and misleading use of Whirlpool's mark and model number, the actual product being sold in that listing was an "Aqua Blue" filter, which is compatible with Whirlpool water filters but does not share a model number and is not connected to the Whirlpool brand. *See id.*

The water filters Menpin sold infringe on one or more claims of a number of Whirlpool's patents, including claims 1 and 4 of U.S. Patent No. 7,000,894, claim 1 of U.S. Patent No. 8,356,716, claim 1 of U.S. Patent No. 8,591,736, and claim 1 of U.S. Patent No. 9,937,451. *See* Complaint ¶¶ 105-06, 117, 141, 164; *see also* DE 17-5 ("Beaman Decl.") (expert declaration with claim charts in support of allegation that the relevant products infringe Whirlpool's patents).

Whirlpool began to experience a decline in its unit sales of Whirlpool filters in 2015. This decline coincided with Whirlpool becoming aware that a large number of retailers were selling knockoff Whirlpool filters online for lower prices than Whirlpool charged, which affected the behavior of consumers. The prevalence of copycat filters puts Whirlpool's ability to ensure quality at risk as Whirlpool has no control over the quality, testing, or compatibility of those products. Whirlpool's trade partners have expressed concern to Whirlpool about the economics of selling genuine filters when cheaper copycat filters are readily available. *See* White Decl. ¶¶ 15-19.

B.   Proceedings

Whirlpool filed its Complaint on May 8, 2019, asserting claims under state and federal law including trademark infringement and false designation of origin under the Lanham Act, common law trademark infringement and unfair competition, infringement of seven separate United States patents, and deceptive acts and practices under New York State law. *See* DE 1.

Whirlpool served the Complaint on Menpin on May 16, 2019. DE 13; DE 14. Menpin never responded. On August 29, 2019, at Whirlpool's request, the Clerk entered Menpin's default. *See* DE 15; DE 16. Whirlpool filed the instant motion on October 22, 2019. *See* DE 17. By order dated November 4, 2019, the court referred the motion to me for a report and recommendation. That same day, I set a deadline for Whirlpool to submit any supporting materials they wished for me to consider. Whirlpool did not submit any additional materials and stated that it seeks only injunctive relief and not damages or attorneys' fees. *See* DE 20.

II.     Discussion

    A.     Default

Although a court accepts as true all well-pleaded allegations against a defaulting defendant for purposes of determining liability, a default is not an admission of damages, which must be established in a separate evidentiary proceeding; even where a party has defaulted, it may still contest the amount of damages awarded to a plaintiff. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). A default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g., Greyhound Exhibitgroup*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)); *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 280 (E.D.N.Y. 2010).

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *House v. Kent Worldwide Mach. Works., Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Even when the defendant defaults, damages must be based on admissible evidence. *See House*, 359 F. App'x at 207. Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

    B.     Liability

        1.     Lanham Act

Whirlpool asserts two claims under the Lanham Act: trademark infringement in violation of 15 U.S.C. § 1114 and false designation of origin in violation of 15 U.S.C. § 1125(a). Trademark

4

infringement is the use without consent of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(1)(a). A claim of false designation of origin, or "trade dress infringement," requires the use of "any word, term, name, symbol, or device, or any combination thereof" which "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of ... goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1).

The same legal standard applies to both Lanham Act claims. *See Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014). Specifically, Whirlpool must show that it owns a valid trademark, that Menpin used the trademark in commerce, and that Menpin's use of that mark is likely to cause confusion regarding the source of the relevant product or services. *Mitchell Grp. USA LLC v. Udeh*, 2017 WL 9487193, at *3 (E.D.N.Y. Mar. 8, 2017); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006); *GMA Accessories, Inc. v. Croscill, Inc.*, 2008 WL 591803, at *3 n.2 (S.D.N.Y. Mar. 3, 2008).

Courts evaluate the latter element – likelihood of confusion – by considering the eight "*Polaroid* factors." *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Those factors are: (1) strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products in the marketplace; (4) the likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its product); (5) evidence of actual confusion; (6) the defendant's bad faith; (7) quality of the defendant's product; and (8) sophistication of the relevant consumer group. *See id.*; *Louis Vuitton Malletier*, 454 F.3d at 116-117. No single factor is dispositive; the court's task is to weigh them with an eye toward the ultimate

5

question of whether consumers are likely to be confused. *See Brennan's Inc. v. Brennan's Rest.*, 360 F.3d 125, 130 (2d Cir. 2004).

I conclude that the Complaint's unrebutted factual allegations suffice to establish Whirlpool's Lanham Act claims. First, Whirlpool has alleged that their various marks are registered with the USPTO. *See* Complaint ¶¶ 1, 3-4, 23-33. Second, Whirlpool has proved that Menpin made unauthorized uses of these marks in commerce. *See id.* ¶¶ 34-62 & Ex. A. Finally, as discussed below, the *Polaroid* factors weigh heavily in Whirlpool's favor, compelling the conclusion that consumers are likely to be confused by the Menpin's use of the Whirlpool marks.

As to the first *Polaroid* factor, the Whirlpool mark is presumed to be strong by virtue of being registered. *See Doctor's Associates LLC v. Hai*, 2019 WL 3330242, at *4 (E.D.N.Y. May 13, 2019) (citing *Century 21 Real Estate LLC v. Becerosa Corp.*, 666 F. Supp. 2d 274, 282 (E.D.N.Y. 2009). Moreover, Whirlpool has devoted substantial time and resources to developing goodwill in their marks and to causing consumers to associate it exclusively with their high-quality goods. Complaint ¶¶ 20-21. As to similarity, the defendants are using identical Whirlpool, KitchenAid, Maytag, and EveryDrop word marks to advertise their own filters. *See id.* ¶¶ 34-62 & Ex. A. With regard to the proximity of the products in the marketplace and the likelihood that Whirlpool will bridge the gap between the products, Menpin is currently utilizing Whirlpool's marks on the same type of filters produced by Whirlpool itself and the products therefore inevitably share the same marketplace. As to likelihood of confusion, while Menpin's default has prevented Whirlpool from receiving evidence in discovery, the fact that Menpin is explicitly holding its own products out as Whirlpool products easily supports the inference that consumer confusion will result.

Menpin demonstrated bad faith by continuing to engage in infringing conduct after receiving multiple complaints, infringement notices, and demands to stop engaging in such conduct. *See id.* ¶¶ 63-71. The quality factor also weighs in Whirlpool's favor. Whirlpool puts substantial resources

6

into maintaining high quality in their filters and because they have no control over the quality of Menpin's filters, there is no reason to believe those same resources would be invested into the quality of the copycat filter. *See* White Decl. ¶¶ 8-9, 18-19. Finally, regarding the sophistication of consumers, water filters are both prevalent and relatively inexpensive. There is no reason to believe that an average consumer would have the specialized knowledge or wherewithal to avoid confusion between a copycat filter bearing the Whirlpool mark and the genuine product. Therefore, the final factor also weighs in Whirlpool's favor. Considering all of the factors together, I conclude that Whirlpool has established Menpin's liability on both Lanham Act claims.

### 2. New York Common Law

By establishing the federal trademark infringement claims, Whirlpool also necessarily establishes Menpin's liability on the parallel infringement claim under New York common law. *See Mitchell Grp. USA LLC*, 2017 WL 9487193, at *4 (citing *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, at *7 (E.D.N.Y. Mar. 26, 2004)). Menpin's liability on the Lanham Act claims also suffices to establish its liability for unfair competition claim under New York common law if Whirlpool can demonstrate Menpin's bad faith. *See Jeffrey Milstein v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995). As discussed above with reference to the *Polaroid* factors, the Complaint adequately alleges, and the default therefore establishes, that Menpin willfully sold infringing goods bearing the plaintiff's marks even after receiving notice of their infringement. Complaint ¶¶ 63-71. I therefore conclude that Menpin is liable on Whirlpool's claims under New York common law.

### 3. Patent Infringement

As with Whirlpool's claims for trademark infringement, I conclude that the Complaint's factual allegations, deemed true by virtue of Menpin's default, suffice to establish Whirlpool's patent infringement claims. First, Whirlpool has alleged that their various patents are registered with the USPTO and provided evidence of same. *See* Complaint ¶¶ 2, 101, 113, 125, 137, 150, 161, 173 &

7

Exs. B-H. Second, Whirlpool has alleged that Menpin has infringed and continues to infringe on at least claims 1 and 4 of Patent No. 7,000,894 and claim 1 of Patent Nos. 8,356,716, 8,413,818, 8,591,736, 8,845,896, 9,937,451, and 10,010,820. *See id.* ¶¶ 105-06, 117, 129, 141, 153, 164, 176. Finally, Whirlpool has alleged that they have been and continue to be damaged as a result of Menpin's infringement. Complaint ¶¶ 107, 118, 130, 142, 154, 165, and 177. I therefore conclude that Menpin is liable on each of Whirlpool's seven claims for patent infringement

    4.    <u>Deceptive Business Practices</u>

As explained below, I conclude that the Complaint's unrebutted, non-conclusory allegations do not suffice to establish Menpin's liability under New York's statutory prohibition of deceptive business practices. "[T]he majority view in this Circuit is that trademark ... infringement claims are not cognizable under [N.Y. Gen. Bus. Law § 349] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement[.]" *Philip Morris USA Inc. v. U.S. Sun Star Trading Inc.*, 2010 WL 2133937, at *6 (E.D.N.Y. Mar. 11, 2010) (quoting *Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, 2009 WL 4857605, at *8 (S.D.N.Y. Dec. 14, 2009)); *accord N. Atlantic Operating Co., Inc. v. Evergreen Distributors, LLC*, 2015 WL 13856995, at *10 (E.D.N.Y. Jan. 5, 2015) (finding insufficient allegation of "only the type of harm ordinarily attributed to trademark infringement, such as consumer confusion and loss of goodwill" as opposed to "allegations of a greater injury, such as a threat to public health or safety."); *Gross v. Bare Escentuals Beauty, Inc.*, 632 F. Supp. 2d 293, 299 (S.D.N.Y. 2008) ("Consumer confusion as to the source of the e any such specific and substantial injury to the public interest, and in its motion for default judgment it makes no argument to the contrary. Whirlpool thus appears to have abandoned the claim. I therefore respectfully recommend that the court deny the request for default judgment on the deceptive business practices claim, and instead dismiss that cause of action.

8

C.	Relief

Whirlpool seeks only injunctive relief and has disclaimed any recovery of damages or attorneys' fees. *See* DE 20. As explained below, I conclude that it is entitled to the relief it seeks.

Whirlpool seeks three distinct injunctive remedies. First, it asks the court to permanently enjoin Menpin from, in essence, infringing on certain claims in its patents by selling or distributing in the United States "Aqua Blue" water filters bearing certain model numbers, or any replacement water filters that are not sufficiently distinguishable from those models. *See* DE 17-6 (Proposed Judgment) ¶ 1. Second, Whirlpool essentially seeks to permanently enjoin Menpin from using any of the its marks or model numbers to name, identify, or describe refrigerator water filters Whirlpool did not make or to falsely suggest any Whirlpool affiliation, sponsorship, or approval in Menpin's online product listings, advertisements, or on the company's website. *See id.* ¶ 2. Finally, Whirlpool asks the court to order Menpin to immediately stop all advertising links on websites or search engines that direct to any webpage with an aquabluefilters.com domain name that references one or more of the infringing products and to refrain from engaging in such advertising. *See id.* ¶ 3.

The Lanham Act provides for such relief, "according to the principles of equity and upon such terms as the court may deem reasonable to prevent the violation of … [the Act.]" 15 U.S.C. § 1116. The relevant statute in the context of patent infringement provides for injunctive relief "to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

Under the case law of this circuit, a permanent injunction is warranted where a party has succeeded on the merits, *see Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006), and establishes:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

9

*Salinger v. Colting*, 607 F.3d 68, 77 (2d. Cir. 2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)); *see also United States v. Pugh,* 717 F. Supp. 2d 271, 301 (E.D.N.Y. 2010); *Microsoft Corp. v. AGA Solutions, Inc.*, 589 F. Supp. 2d 195, 204 (E.D.N.Y. 2008). Accordingly, Whirlpool – having succeeded on the merits of his Lanham Act and patent infringement claims – is entitled to an injunction if it establishes the remaining factors. I consider each in turn.

Irreparable injury in trademark cases is established where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source" of the goods or services in question. *Lobo Enters., v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir. 1987) (internal quotation marks and citations omitted); *see also Burndy Corp. v. Teledyne Indus., Inc.* 748 F.2d 767, 772 (2d Cir. 1984) ("permanent injunctive relief will be granted only upon proof of the likelihood that purchasers of the product may be misled in the future"); *Collins v. Aztar Corp.*, 210 F.3d 354, 354 (2d Cir. 2000); *cf. SEC v. Manor Nursing Ctrs, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972) (injunction unnecessary if there is no reasonable likelihood that the conduct at issue will be repeated).

In patent cases, a finding of infringement does not itself establish irreparable harm. *See eBay Inc. v. MercExchange, LLC.*, 547 U.S. at 393. "Rather, courts must look to the business impact of the infringement when determining whether a plaintiff has been irreparably injured." *Kaneka Corp. v. Purestar Chem Enterprise Co., Ltd.*, 2018 WL 3215680, at *4 (E.D.N.Y. May 1, 2018) (citing *Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, 788 F. Supp. 2d 71, 74 (E.D.N.Y. 2011)).

The record establishes that in the absence of an injunction, Menpin will continue to infringe on the Whirlpool marks, and that such infringement is likely to mislead consumers. In particular, the record shows that Menpin ignored repeated notices and warnings that its conduct was infringing on valid marks, and continued in its misconduct. *See* Complaint ¶¶ 63-71. Moreover, the record establishes that Whirlpool has experienced a decline in sales of its water filters which coincides with

10

their awareness that a large number of retailers were offering copycat filters and that Whirlpool's trade partners have expressed concern about the economics of selling genuine Whirlpool filters when cheaper bogus filters are readily available. *See* White Decl. at ¶¶ 15-19. In addition, the lack of Whirlpool's quality control over products that are being held out under the Whirlpool name poses a threat of irreparable harm to its reputation for quality and customer service. *See id.* at ¶ 19.

Whirlpool has also established that it has no adequate remedy at law. Such an adequate remedy exists if an injured party can be compensated by a monetary damages award. *See Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991). However, in cases where confusion about the origin of goods or services leads to damage to reputation or loss of a potential relationship with a client that "would produce an indeterminate amount of business in years to come[,]" monetary damages are difficult to establish and are unlikely to present an adequate remedy at law. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999)). If Menpin is allowed to continue to use the Whirlpool marks and to infringe Whirlpool's patents, it may adversely affect Whirlpool's reputation and business in ways that will prove difficult to quantify and that will not lend themselves easily to monetary compensation.

Balancing the relative hardships also favors granting Whirlpool permanent injunctions. As explained above, absent injunctive relief, Whirlpool faces the threat of irreparable harm to the reputation and goodwill associated with their marks and brand. Further, any harm to Menpin would not outweigh the irreparable harm and damage to Whirlpool should it continue its infringing behavior. An injunction will not prevent Menpin from continuing to sell water filters; it would only prohibit it from doing so using advertising that infringes on Whirlpool's marks and designs that infringe on Whirlpool's patents.

Finally, the public interest will not be disserved by the issuance of a permanent injunction in this case. "In patent infringement cases, there is a strong public policy favoring the enforcement of

11

patent rights." *Kaneka Corp.*, 2018 WL 3215680, at *5 (internal citation omitted). In trademark infringement cases, the public interest "lies in avoiding confusion, particularly where [the] defendant would be able to continue its activities under another mark." *Mitchell Grp. USA LLC*, 2017 WL 9487193, at *8 (quoting *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010)). As set forth above, Whirlpool has established its ownership of the relevant patents and trademarks and a likelihood of confusion. Therefore, the public interest would not be disserved by injunctions that will enforce Whirlpool's patent rights and reduce the risk of confusion. I therefore respectfully recommend that the court award Whirlpool the injunctive relief it seeks.

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court enter judgment against Menpin on the Complaint's first ten counts, dismiss the eleventh count, and issue a permanent injunction in the form set forth in Paragraphs 1 to 3 of the Proposed Judgment.

IV.     Objections

I respectfully direct the plaintiff to serve a copy of this Report and Recommendation on the defendant by certified mail, and to file proof of service no later than October 5, 2020. Any objections to this Report and Recommendation must be filed no later than October 14, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2020

_____/s/_____
James Orenstein
U.S. Magistrate Judge